Case 1:23-mj-00067-MU *SEALED* Document 1 Filed 03/17/23 Page 1 of 1 PageID #: 1
Case 2:23-mj-00067-N/A-ESK Document 3 Filed 05/17/23 Page 1 of 17 PageID #: 136

ALSD Local 106 (Rev. 07/13) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
information associated with ▮▮▮▮▮2813 that is stored )
at premises controlled by T-Mobile )
)

Case No. MJ-23- 67

Filed under seal

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated by reference).

located in the _____ District of ____New Jersey____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1704, 1708, and 371 | Stolen or reproduced mail keys or locks, mail theft, and conspiracy |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Michael Maxey, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: 03/17/2023

P. Bradley Murray  Digitally signed by P. Bradley Murray
Date: 2023.03.17 15:33:37 -05'00'
*Judge's signature*

City and state: Mobile, Alabama      P. Bradley Murray, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ▇▇▇-2813 THAT IS STORED AT PREMISES CONROLLED BY T-MOBILE | Case No. MJ-23-__67__<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Maxey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by T-Mobile, a wireless provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require T-Mobile to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and have been since August of 2017. During my more than four years with USPIS, I have worked on many investigations involving theft of mail, various postal crimes, and fraud offenses, among other crimes. Before becoming a Postal Inspector, I attended a three-month Postal Inspector Basic Training course in Potomac, Maryland, during which I received training on criminal investigative techniques and practices. Additionally, before joining USPIS, I worked for more than seven years as a police officer with the Mobile, Alabama Police Department. During that time, I spent more

than three years as a detective in MPD's Financial Crimes Unit. I was also a federally deputized task force officer for the U.S. Secret Service, where I investigated both federal and state fraud-related crimes. My duties as a Postal Inspector include investigating suspected mail theft (18 U.S.C. § 1708); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); bank fraud (18 U.S.C. § 1344); conspiracy offenses (18 U.S.C. §§ 371 and 1349); identity theft offenses (18 U.S.C. § 1028); and aggravated identity theft (18 U.S.C. § 1028A), among other crimes. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All dates, locations, and amounts referenced in my affidavit are approximations.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1704 (stolen or reproduced mail keys or locks), 1708 (mail theft), and 371 (conspiracy) have been committed by ▆▆▆▆▆ ("▆▆▆▆") and **Kristen Williams** ("**Williams**"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

SEALED

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On November 2, 2022, United States Magistrate Judge Sonja F. Bivins signed a criminal complaint authorizing the probable cause arrest of ▮▮▮ for violations of 18 U.S.C. §§ 1704 (stolen or reproduced mail keys or locks) and 1708 (mail theft). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For purposes of brevity, my affidavit fully incorporates the facts from the affidavit I submitted in support of that criminal complaint. *Id.*, Doc. 1-1. ▮▮▮ was caught in the act of using an arrow key—property of the United States Postal Service—to open blue collection boxes and steal mail in the Southern District of Alabama.

7. On November 28, 2022, a federal grand jury in the Southern District of Alabama returned an indictment against ▮▮▮ charging him with violations of 18 U.S.C. §§ 1704 (stolen or reproduced mail keys or locks), 1708 (mail theft), 1028A(a)(1) (aggravated identity theft), and 1349 (conspiracy to commit bank fraud). *Id.*, Doc. 18.

8. On March 2, 2023, ▮▮▮ pleaded guilty in the Southern District of Alabama to violating 18 U.S.C. §§ 1349 (conspiracy to commit bank fraud) and 1028A(a)(1) (aggravated identity theft). *Id.*, Docs. 40–41, 45.

9. During the course of my investigation, I conducted post-guilty plea interviews with ▮▮▮ ▮▮▮ attorney, Brian Dasinger ("Dasinger"), is aware of the interviews and consented to the interviews taking place pursuant to a proffer agreement with the United States. ▮▮▮ stated

SEALED

that he received the arrow key he had used to commit mail theft from a Postal employee known to him as "Arielle," who was later identified as **Williams**. ▇ stated that in October 2022, he purchased the arrow key from **Williams** in the parking lot of Walmart, located at 101 East Interstate 65 Service Road South, Mobile, Alabama 36606. ▇ claimed he paid **Williams** $2,500.00 in U.S. currency for the arrow key. ▇ stated that he saved **Williams** in his contacts list in his cellular phone as "Mail."

10. On November 1, 2022, when I arrested ▇ I also took possession of his cellular device ("the device"). On November 4, 2022, United States Magistrate Judge Sonja F. Bivins signed a federal search warrant authorizing the forensic examination of the device. *See* ▇ ▇. For purposes of brevity, my affidavit fully incorporates the facts from the affidavit I submitted in support of that search warrant. I discovered hundreds of messages between ▇ and various coconspirators discussing the commission of various fraudulent schemes on the device.

11. Additionally, my review of ▇ contact list revealed that **Williams's** cellular phone number, ▇-2813, was stored in the device under the contact name "Mail," as ▇ had stated. I subsequently sent a federal grand jury subpoena to T-Mobile for subscriber information for ▇-2813 and the results confirmed that the number belongs to **Williams**. A video on ▇ phone also revealed recorded footage of the arrow key that he purchased from **Williams**. In the video, the serial number of the arrow key, 15891, is visible. *See* Figure 1 below. Additionally, **Williams's** T-Mobile phone records revealed that she began contacting ▇ in October 2022 and had multiple phone conversations with him.

SEALED



***Fig. 1*** **(image of the stolen arrow key found on ▆▆▆▆ device).**

12.     **Williams** is a United States Postal Service ("USPS") employee whose duties include the delivery of U.S. mail. **Williams** works at the Prichard, Alabama post office, located at 130 East Prichard Avenue, Prichard, Alabama 36610. During the course of **Williams's** day-to-day duties as a mail carrier, she has access to arrow keys and the area where arrow keys are stored. Arrow key 15891, visible in Figure 1 above, is assigned to the Prichard post office and was reported missing by USPS manager Sharon Shelter on October 20, 2022.

SEALED

13. On March 6, 2023, ▮ met Postal Inspector Doug Wilson ("Wilson") and I at the USPISs' Mobile, Alabama domicile ("the domicile"), located at 460 Government Street, Mobile, Alabama 36602, and contacted **Williams** via text message. ▮ texted **Williams** on her cellular device registered to telephone number ▮-2813. ▮ requested to purchase another arrow key from **Williams**, who acknowledged selling the previous arrow key to ▮ **Williams** stated that the post office is "very strict about it now" but told ▮ "Let me see." *See* Figure 2 below. ▮ sent and received the messages between he and **Williams** while he was at the domicile and in the presence of Wilson and me.

SEALED



*Fig. 2* (Mar. 6, 2023 text messages between Williams and ▮▮▮▮)

      14.    Based on the above, I believe probable cause exists for the requested records, including location records, for cell phone account ▮▮▮▮-2813.

7

SEALED

15. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages T-Mobile subscribers may be located on the computers of T-Mobile. Further, I am aware that computers located at T-Mobile contain information and other stored electronic communications belonging to unrelated third parties.

16. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of T-Mobile for weeks or months.

17. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by T-Mobile for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

18. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists

SEALED

of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

19. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

20. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

21. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the

address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

22. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

23. As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account

payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

24. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require T-Mobile to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

SEALED

## CONCLUSION

25. Based on the forgoing, I request that the Court issue the proposed search warrant.

26. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

27. The government will execute this warrant by serving the warrant on T-Mobile. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Michael Maxey
Postal Inspector
US Postal Inspection Service

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS __17th__
DAY OF MARCH 2023.

**P. Bradley Murray** Digitally signed by P. Bradley Murray
Date: 2023.03.17 15:39:36 -05'00'
_____
P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with ██████-2813 that is stored at premises owned, maintained, controlled, or operated by T-Mobile, a wireless provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

**SEALED**

## ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by T-Mobile

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to T-Mobile or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.    All voice mail, text, and multimedia messages **from October 1, 2022 to present** stored and presently contained in, or on behalf of the account or identifier;

    b.    All existing printouts from original storage of all of the text messages described above;

    c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used **from October 1, 2022 to present**;

    d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message **from October 1, 2022 to present**;

    e.    All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names,

1

**SEALED**

addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

  f. Detailed billing records, showing all billable calls including outgoing digits, **from October 1, 2022 to present**;

  g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), **from October 1, 2022 to present**;

  h. Incoming and outgoing telephone numbers, **from October 1, 2022 to present**;

  i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

  j. All records pertaining to communications between T-Mobile and any person regarding the account or identifier, including contacts with support services and records of actions taken.

T-Mobile is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1704 (stolen or reproduced mail keys or locks), 1708 (mail theft), and 371 (conspiracy) involving **Kristen Williams** (███-2813) and any

2

**SEALED**

coconspirators since October 1, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

    a.    The selling or theft of arrow keys, solicitation of individuals to acquire arrow keys, preparatory steps taken in furtherance of the scheme, and the theft of mail;

    b.    Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

    c.    Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

    d.    Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

    e.    The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

    f.    The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the producing and depositing of counterfeit checks into financial institutions, solicitation of individuals with accounts at financial institutions, preparatory steps taken in furtherance of the scheme, and the theft of mail, including records that help reveal their whereabouts.

**SEALED**